IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ARETTA D. FOREMAN | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-12-3148 |
| | § | |
| CAROLYN W. COLVIN,[1] | § | |
| Acting Commissioner of the | § | |
| Social Security Administration, | § | |
| | § | |
| Defendant. | § | |

### MEMORANDUM OPINION

Pending before the court[2] are Defendant's Cross-Motion for Summary Judgment (Doc. 17) and Plaintiff's Cross-Motion for Summary Judgment (Doc. 18). The court has considered the motions, the responses, the administrative record, and the applicable law. For the reasons set forth below, the court **DENIES** Defendant's Cross-Motion for Summary Judgment and **GRANTS** Plaintiff's Cross-Motion for Summary Judgment. The court **REMANDS** the case for further determination consistent with this opinion.

### I. Case Background

Plaintiff filed this action pursuant to 42 U.S.C. § 405 (g) for judicial review of an unfavorable decision by the Commissioner

---

[1] Michael Astrue was the Commissioner of the Social Security Administration at the time that Plaintiff filed this case but no longer holds that position. Carolyn W. Colvin is Acting Commissioner of the Social Security Administration and, as such, is automatically substituted as Defendant. See Fed. R. Civ. P. 25 (d).

[2] The parties consented to proceed before the undersigned magistrate judge for all proceedings, including trial and final judgment, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. Docs 9, 12, 15.

of the Social Security Administration ("Commissioner" or "Defendant") regarding Plaintiff's request for waiver of overpayment recovery.

## A.   **Procedural History**

Plaintiff was born on September 5, 1958, and was forty-one years old on the date of the onset of disability.[3]  She has a ninth grade education and worked as a folder and sorter in a laundry cleaning business and as a janitor until February 3, 2000.[4]

In February 2000, Plaintiff began experiencing problems with her right foot.[5]  Plaintiff also began experiencing depression.[6] On September 12, 2001, Plaintiff filed a Title II application for a period of disability insurance benefits.[7]  In her application for Title II benefits, Plaintiff stated that she had filed for workers' compensation benefits with the State of Washington Department of Labor and Industry ("Washington DLI") and that she had an appeal pending.[8]  On March 6, 2004, an administrative law judge ("ALJ") issued a favorable decision finding Plaintiff disabled since

---

[3]     See Tr. of Admin. Proceedings ("Tr") 123, 126.

[4]     See Tr. 123.

[5]     See id.

[6]     See Tr. 124.

[7]     See Tr. 123.

[8]     See Tr. 195.

February 3, 2000.[9]

Regarding her workers' compensation claim, Plaintiff underwent a panel review in February 2002.[10]  The State physician found the following severe physical impairments: plantar fascitis, bilateral; calcaneal heel spur on the left foot with surgical removal; Achilles tendon contracture, left sided; and status post gastrocnemius tendon release on the left side.[11]  The State physician considered Plaintiff limited to sedentary work activity.[12]  Plaintiff also reported that she was experiencing depression.[13]  The State physician considered her depression severe but treatable.[14]  Plaintiff's workers compensation appeal was decided in her favor in early 2003.[15]  Plaintiff did not report this to the Social Security Administration ("SSA") at that time.

On May 10, 2004, the SSA sent Plaintiff a Notice of Award advising her that she was entitled to monthly disability benefits as of September 2000.[16]  The letter stated that Plaintiff's first check for back benefits was to be in the amount of $27,263 for the

---

[9]    See Tr. 119-127.

[10]   See Tr. 124.

[11]   See id.

[12]   See id.

[13]   See id.

[14]   See id.

[15]   See Tr. 21.

[16]   See Tr. 129.

3

period of September 2000 through April 2004.[17]

The letter also advised that the amount Plaintiff actually would receive could differ from the full benefit amount, and that the SSA must deduct certain amounts, including certain amounts she received from workers' compensation.[18]   Furthermore, the letter warned that the SSA needed proof of Plaintiff's workers' compensation payments to determine how much her benefits would be offset for the period of September 2000 through March 2004.[19]   The letter continued, "When we get that information, we will make a final decision on the amount of your benefits".[20]   Finally, the letter concluded in a paragraph entitled "Your Responsibilities":

> The decisions we made on your claim are based on information you gave us.  If this information changes, it could affect your benefits.   For this reason, it is important that you report changes to us right away.   We have enclosed a pamphlet, "When You Get Social Security Disability Benefits… What You Need to Know."  It will tell you what must be reported and how to report.[21]

The referenced pamphlet alerted Plaintiff that Social Security benefits may be reduced if she was also eligible for workers' compensation benefits.[22]   The SSA required beneficiaries, such as

---

[17]   See id.

[18]   See Tr. 129, 130.

[19]   See Tr. 130.

[20]   Id.

[21]   Tr. 131.

[22]       See Social Security Administration, What You Need to Know When You Get Social Security Disability Benefits, SSA Publication No. 05-10153, ICN 480165 (April 2011).   The pamphlet is available online at

4

Plaintiff, to report if they received another disability benefit or a lump-sum settlement.[23]   The pamphlet also informed beneficiaries to notify the SSA "promptly by phone, mail or in person whenever a change occurs" that could affect their benefits.[24]   Beneficiaries were advised that information they gave to another government agency could be provided to the SSA by the other agency but they must also report the change directly to the SSA.[25]

Finally, the pamphlet warned that if a beneficiary did not report a change, it may result in an overpayment and, therefore, an obligation to repay the money.[26]   The letter also stated: "You can help us finish the work on your claim by taking that information to any Social Security office."[27]   Later, in May 2004, before Plaintiff had provided the SSA with the information requested, the SSA issued the first check in the amount of $27,263, the exact amount from the first letter.[28]

On August 24, 2004, Plaintiff received a letter from the Washington DLI informing her that, as she was entitled to Social Security disability, her workers' compensation benefits could be

---

http://www.socialsecurity.gov/pubs/EN-05-10153.pdf.

[23]   Id.

[24]   Id.

[25]   See id.

[26]   See id.

[27]   Tr. 130.

[28]   See Tr. 198, 129.

subject to a reduction.[29]  On October 11, 2004, the Washington DLI sent Plaintiff a Notice of Decision announcing that compensation on her claim was being decreased effective September 1, 2004, because she was entitled to federal disability benefits.[30]

On November 24, 2004, the SSA sent Plaintiff a Request for Evidence and/or Documents.[31]  In it, the agency stated that they needed proof of her workers' compensation award.[32]  The record is devoid of any evidence that Plaintiff supplied the information requested.[33]

The record next shows that in January 9, 2007, the SSA sent Plaintiff a letter requesting that she provide certain information on her workers' compensation payments.[34] The letter asked Plaintiff if she was receiving workers' compensation payments, to which she replied in the affirmative.[35] The letter inquired about the amount and frequency of the workers' compensation payments, to which

---

[29]    See Tr. 134.

[30]    See Tr. 137.

[31]    See Tr. 103.

[32]    See id.

[33]        Although another letter sent on November 30, 2004, informed Plaintiff that the SSA could not act on the "enclosed correspondence or document" because she did not provide her Social Security number, the letter did not identify the enclosed correspondence or document.  That correspondence or document is absent from the record before this court.  This court's review is limited to information in the record and it cannot assume Plaintiff provided the requested information.

[34]    See Tr. 223.

[35]    See id.

Plaintiff replied that she received $240.62 biweekly.[36]  Finally, the letter asked whether Plaintiff received a lump-sum payment and sought details about it, to which she replied that she received $21,000 in 2003.[37]

On March 22, 2008, the SSA sent Plaintiff a Notice of Change in Benefits, informing her that, because of her worker's compensation payments, the SSA was reducing her benefits.[38] In that same year, the SSA notified Plaintiff that she had been overpaid $27,418 due to the amount of workers' compensation she received.[39] On January 28, 2009, the SSA sent Plaintiff a Notice of Reconsideration, finding that the overpayment amount of $27,418 was correct and informing her of her right to a hearing.[40]

Plaintiff requested a hearing with an ALJ on March 23, 2009.[41] Plaintiff also requested a waiver of overpayment recovery on May 13, 2010.[42]  On the following day, May 14, 2010, a hearing was held before an ALJ.[43]

On February 11, 2011, the ALJ concluded that Plaintiff had

---

[36]     See id.

[37]     See id.

[38]     See Tr. 30.

[39]     See Tr. 18.

[40]     See Tr. 33.

[41]     See Tr. 35.

[42]     See Tr. 159–166.

[43]     See Tr. 268.

been overpaid, that Plaintiff was at fault in causing the
overpayment, and that recovery was not to be waived.[44]   The ALJ
found that the amount that was overpaid was $23,956, not the
originally requested amount of $27,418.[45]   More specifically, the
ALJ found that Plaintiff had failed to "timely notify SSA that her
workers' compensation appeal was decided in her favor in early 2003
and she did not timely provide proof of her workers' compensation
payments."[46]

On June 20, 2012, Plaintiff formally requested that the
Appeals Council reconsider the ALJ's unfavorable decision.[47]
Plaintiff argued that the ALJ erred in not taking into account
Plaintiff's physical, mental, and educational limitations in her
determination.[48]   Plaintiff also argued that she had, in fact,
provided the information to the SSA regarding her workers'
compensation benefits and that she had an appeal pending.[49]
Plaintiff further stated that the language in the Notice of Award
letter, dated May 10, 2004, reasonably lead her to believe that she

---

[44]   See Tr. 20, 21.

[45]   See Tr. 20.

[46]   Tr. 21.

[47]   See Tr. 264.

[48]   See id.

[49]   See Tr. 265.

had provided the information requested.[50]

On August 22, 2012, the Appeals Council denied her request for review, finding no reason under the rules to review the ALJ's decision.[51]  Plaintiff then filed this civil action, asking for the court's review of the ALJ's decision.

## II. Standard of Review and Applicable Law

Judicial review of the Commissioner's final decision under 42 U.S.C. § 405 (g) is limited to whether the decision is supported by substantial evidence in the record as a whole and whether the proper legal standard was used in evaluating the evidence.  See Waters v. Barnhart, 276 F.3d 716, 718 (5th Cir. 2002).  Substantial evidence is such evidence that a reasonable mind might accept as adequate to support the decision.  Richardson v. Perales, 402 U.S. 389, 401 (1971).  It is defined as more than a mere scintilla but less than a preponderance.  Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988).  The Court may not reweigh the evidence in the record, try the issues de novo, or substitute its judgment for that of the Commissioner.  Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994). A finding of no substantial evidence is appropriate only if no credible evidentiary choices exist to support the decision. Johnson v. Bowen, 864 F.2d 340, 343-344 (5th Cir. 1988).

Title II of the Social Security Act provides:

---

[50]    See id.

[51]    See Tr. 3.

9

> In any case in which more than the correct amount of
> payment has been made, there shall be no adjustment to,
> or recovery by the United States from, any person who is
> without fault if such adjustment or recovery would defeat
> the purpose of this subchapter or would be against equity
> and good conscience.

42 U.S.C. § 404(b).  The burden of proof to show the absence of

fault rests on the overpaid individual.  Bray v. Bowen, 854 F.2d

685, 687 (5th Cir. 1988).  What constitutes fault depends upon

whether the facts show that the incorrect payment resulted from,

among other things, failure to furnish information which she knew

or should have known to be material.  20 C.F.R. § 404.507.

### III. Analysis

Plaintiff requests judicial review of the ALJ's decision to

deny waiver of overpayment recovery.  Defendant argues that the

decision is legally sound and is supported by substantial evidence.

Specifically, Plaintiff argues that the ALJ erred in finding that

Plaintiff was at fault.[52]  Plaintiff first argues the ALJ failed to

adequately take into account Plaintiff's physical, mental, and

educational limitations in her determination.[53]  Plaintiff next

argues that Plaintiff did not fail to furnish information she knew

or should have known to be material.[54]  Finally, Plaintiff argues

that the ALJ erred by failing to address whether recovery of the

---

[52]  See Doc. 18, Pl.'s Mot. for Summ. J. p. 5.

[53]  See id.

[54]  See id. p. 6.

10

overpayment from Plaintiff would defeat the purpose of Title II of the Act or whether recovery would be against equity and good conscience.[55]

Turning to Plaintiff's first argument, Plaintiff claims that she was without fault in causing the overpayment and that the ALJ's determination that Plaintiff was at fault is not supported by substantial evidence.[56]   In her decision, the ALJ found that Plaintiff was at fault because she failed to timely notify the SSA that her workers' compensation appeal was decided in her favor in early 2003 and afterwards she failed to  timely provide proof of her workers' compensation payments.[57]

Plaintiff counters that the ALJ failed to adequately take into account Plaintiff's physical, mental, and education limitations in her determination.[58] Section 404 (b) of 42 U.S.C. states that "the Commissioner of Social Security shall specifically take into account any physical, mental, educational, or linguistic limitation such individual may have".[59]  In her decision, the ALJ stated that Plaintiff had a ninth grade education and could read, adding that her depression, anxiety, and physical complaints would not have

---

[55]   See id. p. 9.

[56]   See id. p. 5.

[57]   See Tr. 21.

[58]   See Doc. 18, Pl.'s Mot. for Summ. J. p. 5.

[59]   See 42 U.S.C. § 404 (b).

11

prevented her from complying with her reporting responsibilities.[60]

Plaintiff claims that such "cursory statements" do not comport with the "take into account" standard because the ALJ did not provide any explanation for her conclusion.[61]  The court does not agree.  The law simply requires the ALJ to "take into account" Plaintiff's limitations.[62]  It does not require the ALJ to provide a detailed explanation why the ALJ did not believe that Plaintiff's limitations prevented her from being found at fault.  By acknowledging Plaintiff's limitations, the ALJ took them into account in her considerations, although not finding the limitations severe enough to warrant relief.  Therefore, the ALJ did not fail to take into account Plaintiff's limitations.

Turning to Plaintiff's second argument, however, the court finds that the record does not show that Plaintiff failed to furnish information she knew or should have known to be material.  The ALJ erred in the determination that Plaintiff failed to timely notify SSA that Plaintiff's workers' compensation appeal was decided in her favor in early 2003 and that she did not timely provide proof of her workers's compensation payments.  The record is devoid of evidence to support the ALJ's determination.

Specifically, there is no evidence in the record that shows

---

[60]  See Tr. 21.

[61]  See Doc. 22, Pl.'s Resp. in Opp. to Def.'s Mot. for Summ. J. p. 2.

[62]  See 42 U.S.C. § 404 (b).

that Plaintiff either knew, or should have known, that she had to inform the SSA that her workers' compensation appeal was decided in her favor.   The record shows that Plaintiff informed the SSA that she had filed a workers' compensation claim when she applied for social security disability insurance.[63]   But nothing in the record indicates that she was informed that she had to update the SSA on the status of her workers' compensation claim.   The record does not include documents from the original disability application process, which might show to what extent Plaintiff was advised of her obligation to provide the SSA with information about her workers' compensation claim.

There is simply no record of any communication between the SSA and Plaintiff before or after her workers' compensation appeal was decided in her favor, in early 2003, that would support a finding that she either knew or should have known that she was required to provide the SSA with information regarding the status of her workers' compensation appeal.   The record is also silent on any communications, before May 2004, between the state agency that issued the workers' compensation payments and Plaintiff in which the latter was notified of her duty to report such payments to the SSA.

The only evidence that supports the ALJ's determination is the letter Plaintiff received in May 10, 2004, in which the SSA

---

[63]     See Tr. 195.

13

informed her that the agency needed proof of her workers' compensation payments and which referenced an enclosed pamphlet warning her of her duty to report any changes in her benefits.[64] But, because the SSA's overpayment was sent within a matter of days after informing Plaintiff of her obligation, a reasonable person would assume that her duty was relieved.

The letter did inform Plaintiff that the amount she received could differ from her full benefit amount and that the SSA needed proof of her workers' compensation payments to determine how much her benefits would be for September 2000 through March 2004.[65] But the letter also announced, in the very first sentence, that Plaintiff's first check was going to be for the amount of $27,263, which was the money she was due through April 2004.[66] This apparent contradiction in the language of the letter could lead a reasonable person to conclude that the amount about to be issued was the correct one.

Furthermore, the letter stated that Plaintiff *could* help the SSA finish the work on her claim by taking the workers' compensation payments information to any of their offices.[67] Such permissive language could lead Plaintiff to believe she was not

---

[64]   See Tr. 129.

[65]   See Tr. 129, 130.

[66]   See Tr. 129.

[67]   See Tr. 130.

14

*required* to take the requested action.  Therefore it cannot be said that, based on this letter, Plaintiff either knew or should have known she was required to notify the SSA about her workers' compensation payments.

There is not substantial evidence to support the ALJ's determination that Plaintiff failed to timely notify SSA that her workers' compensation appeal was decided in her favor in early 2003 and that she did not timely provide proof of her workers' compensation payments.  Thus, the ALJ's determination cannot stand and must be reversed.

Considering Plaintiff's third argument, the court finds that the ALJ did not err by refusing to address whether recovery of the overpayment from Plaintiff would defeat the purpose of Title II or whether recovery would be against equity and good conscience.  When an ALJ determines that a claimant is at fault, the inquiry stops and there is no requirement to analyze whether the recovery of the overpayment would either defeat the purpose of Title II or be against equity and good conscience.

A proper reading of the Act shows that the determination of whether the recovery of the overpaid benefits would defeat the purposes of Title II or be against equity and good conscience is conditional on the claimant being found not at fault.  In other words, if Plaintiff is found to be at fault then there is no need to consider whether recovery of the overpayment would defeat the

15

purposes of Title II or be against equity and good conscience. Therefore, because the ALJ, albeit improperly, found Plaintiff to be at fault in causing the overpayment, the ALJ was not required to determine whether recovery of such overpayment would defeat the purposes of Title II or is against equity and good conscience.

That said, because the ALJ stopped her analysis after finding Plaintiff at fault, the ALJ failed to complete the second half of the waiver analysis.  The court, therefore, must remand this case for further determinations of whether recovering the overpaid amount from Plaintiff would defeat the purposes of Title II or be against equity and good conscience.  Those are determinations that must be made by the ALJ and not by this court, which cannot reweigh the evidence in the record or try issues de novo.  See Bowling, 36 F.3d at 434.

### IV. Conclusion

Based on the foregoing, the Court **DENIES** Defendant's Cross-Motion for Summary Judgment and **GRANTS** Plaintiff's Cross-Motion for Summary Judgment.   The Court **REMANDS** the case for further determinations consistent with this opinion.

**Signed** in Houston, Texas, this $\underline{19}^{th}$ day of July, 2013.

Nancy K. Johnson
United States Magistrate Judge

16